NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 08-31908 |
| | : | Chapter 7 |
| ELROY DEAN INGALLS AND | : | |
| LINDA ANN INGALLS | : | |
| | : | |
| Debtors | : | |
| | : | |
| KENNETH AVON AND PATRICIA AVON | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | Adversary No. 08-2616 |
| | : | |
| LINDA ANN INGALLS | : | |
| | : | |
| Defendant | : | **MEMORANDUM OPINION** |
| | : | Hearing Date: 1/6/2010 |

**APPEARANCES**

Martin P. Skolnick, Esquire
5021 Industrial Road
Farmingdale, New Jersey 07727
Attorney for Plaintiffs

Carol L. Knowlton, Esquire
TEICH, GROH
691 State Highway 33
Trenton, New Jersey 08619
Attorney for Defendant

Kenneth and Patricia Avon filed a three count complaint against Linda Ingalls seeking to have their debt declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6). The Court tried all three counts on January 6, 2010, and reserved decision. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(I).

Factual background

Defendant/Debtor Linda Ingalls was the principal of Unlimited Designs, Inc., an interior design company located at 1924 Route 35, Wall, NJ. On September 29, 2005, Kenneth and Patricia Avon entered into a Retainer Agreement with Unlimited Designs for interior design work to be performed on their residence at 3101A River Road, Point Pleasant, NJ [Ex. P5]. The contract provided for a one-time flat fee of $12,000 for the design services.

Although the contract did not provide for a specific method of payment for merchandise, what developed in the course of the business relationship was that the Avons would provide periodic deposits and Ms. Ingalls would use those funds to purchase agreed upon home furnishings. The Avons paid three deposits of $50,000 each on April 11, 2006; June 22, 2006; and August 3, 2006. The checks were made payable to Unlimited Designs. In addition, the Avons agreed to pay a 25% premium above wholesale for all furnishing ordered through Unlimited Designs. The Avons received all of the items ordered by Unlimited Designs.

The business relationship began to break down in early 2007. In March 2007, the Avons became concerned because they had not received furniture they had ordered in January. Previously, they had received furniture within a month or two of when it was ordered. Numerous phone calls to Ms. Ingalls went unanswered. At that time, business for Unlimited Designs was slowing down.

In April 2007, Ms. Ingalls sent the Avons a letter in which she stated that her brother had wiped out her business account, but that in time she would replenish the Avons' money and deliver the merchandise [Ex. P4]  The only outstanding item at the time was an ottoman and that was subsequently delivered to the Avons.  Ms. Ingalls later admitted in a deposition, and reiterated at trial, that the story about her brother was untrue, but she claimed that at the time she had been afraid to tell the Mr. Avon the truth that her business was faltering and she was using any money she had in her business account to keep it afloat [Ex. P1].

In June 2007, the Avons filed a complaint against Unlimited Designs, Inc. and Linda Ingalls in Superior Court [Ex. P2].  The matter went to mediation and in October 2007 the parties reached a settlement agreement.  The agreement provided that the Defendants in the state court action would pay $375 a month to the Plaintiffs beginning January 2008 until the amount of $9,000 had been repaid [Ex P6].  The agreement was signed by Linda Ingalls, in her individual capacity, and by the attorney for the Defendants.  No separate signature on behalf of Unlimited Designs, Inc. appears on the agreement.  Ms. Ingalls made payments totaling $3,000 before defaulting on the agreement. The Stipulation of Settlement provided: "If the defendant [sic] fails to make any of the aforementioned payments Plaintiffs shall be entitled to have a judgment entered against the Defendants in the amount of $18,000.00 plus legal fees incurred as a result of the default." *Stipulation of Settlement* at ¶ 1.

Unlimited Designs, Inc. ceased operations in mid-2007.  Ms. Ingalls and her husband filed a Chapter 7 bankruptcy petition on November 6, 2008.  The Avons timely filed this adversary complaint objecting to the discharge of their debt on November 18, 2008.

Discussion

Before the Court can address the allegations in the Complaint, it must address the fact that the Plaintiffs' adversary complaint does not contain a count seeking to pierce the corporate veil in order to reach Linda Ingalls in her individual capacity. The absence of such a count is particularly puzzling given that the Plaintiffs included one in their state court complaint [Ex. P2]. The unrefuted evidence demonstrates that the Retainer Agreement that the Avons signed was printed on Unlimited Designs, Inc. letterhead and plainly states that: "This Agreement is between Unlimited Designs Inc., 1924 Route 35, Wall, New Jersey 07719 and Mr. And Mrs. Ken Avon, 3101 A River Road, Point Pleasant, New Jersey" [Ex. P5]. All of the checks that the Avons wrote were made out to Unlimited Designs Inc. and were deposited in the company's business checking account. No facts were adduced at trial that would suggest there is a basis to pierce the corporate veil.

If the Plaintiffs are relying on the Stipulation of Settlement to obviate the need for piercing the corporate veil, such reliance is misplaced. The agreement provides: "It is expressly understood that this Settlement/Release shall not constitute an admission of liability on the part of the Defendant." So, the existence of the settlement agreement cannot act as an admission of personal liability by Linda Ingalls. The fact that she signed the agreement in her individual capacity is of no import; Linda Ingalls was named as a defendant in the state court complaint so it is expected that she would sign a settlement agreement resolving that litigation.

The Court finds that the absence of a count seeking to pierce the corporate veil is fatal to the causes of action alleged here. There is no basis to find Ms. Ingalls liable to the Avons in her individual capacity, therefore, the debt is not a personal liability and thus cannot be found

nondischargeable in her individual bankruptcy case. Moreover, even if the Court were to interpret the Stipulation of Settlement and subsequent payments as an admission of personal liability, the Court would still find that the debt is dischargeable.

**First Count - 11 U.S.C. § 523(a)(2)(A)**

In all actions under § 523, the burden is on the creditor to establish each of the elements of its cause of action by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991). To prevail under § 523(a)(2)(A) the creditor must establish that: (1) the debtor obtained money, property or services through a material misrepresentation; (2) at the time of the transaction the debtor had knowledge of the falsity of the misrepresentation or reckless disregard as to its truth; (3) the debtor made the misrepresentation with the intent to deceive; (4) the creditor relied on the representation; and (5) the creditor suffered loss proximately caused by the debtor's conduct. De la Cruz v. Cohen (In re Cohen), 185 B.R. 180 (Bankr. D.N.J. 1995), *aff'd*, 191 B.R. 599 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd*, 523 U.S. 213 (1998). The Avons cannot establish even the first of the five elements.

The plain language of § 523(a)(2)(A) requires that the money at issue have been <u>obtained</u> through a material misrepresentation. This exception to discharge does not encompass situations, such as this, in which money was legitimately obtained and then misrepresentations occurred thereafter. *See*, In re Fegeley, 118 F.3d 979, 983 (3d Cir. 1997) ("exceptions to discharge are to be strictly construed in favor of the debtor"). The money at issue here is the residuum from the three payments of $50,000 that the Avons made between April and August 2006. No evidence was adduced at trial to suggest that during that period of time Ms. Ingalls intended to defraud the Avons.

5

In fact, the evidence establishes the opposite. The Avons admit that more than $100,000 worth of home furnishings were purchased and delivered to their home. *Complaint* at ¶ 11 ("Linda Ingalls would use the retainer deposit and additional retainer deposits to purchase agreed upon furniture and related home furnishings for the Avon Residence."); *see also*, Ex. D3 (photographs of furnishings in the Avons home). The evidence also establishes that during the relevant period Ms. Ingalls provided the agreed upon design services: she frequently consulted with the Avons and, at their request, accompanied them on shopping trips. At most, the evidence shows that as Unlimited Designs' business began to deteriorate in 2007, Ms. Ingalls used the Avons' money for purposes other than purchasing home furnishings for them. The letter in which Ms. Ingalls lies about her brother emptying her business account and the overcharging for the ottoman all occurred after the relevant time period. Accordingly, such evidence is irrelevant to a cause of action under § 523(a)(2)(A). As explained in In re Hrabik, 330 B.R. 765 (Bankr. D.N.D. 2005):

> The language "obtained by" clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with its money, property or services [...] To sustain a claim of nondischargeability under section 523(a)(2)(A), [creditor] must make a threshold showing that the alleged fraud existed at the time of, and has been the methodology by which, the money, property or services were obtained. Misrepresentations made subsequent to the creation of the debt have no effect upon the dischargeability of a debt, since the false representation could not have been the creditor's reason for the extension of credit; see also 4 L. King, Collier's on Bankruptcy, § 523.08[1][d], 523-44 (15th ed. 1999) ("If the property or services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability.")

Hrabik at 772-73 (internal citations omitted). The Court finds that the Avons have not sustained their burden of proof on the First Count.

**Second Count - 11 U.S.C. § 523(a)(4)**

In the Second Count, the Plaintiffs allege that the Debtor was a fiduciary to the Plaintiffs and her actions in "converting, stealing, embezzling and/or misappropriating funds that were to be used to purchase furniture for Plaintiffs and to pay for services that were to be provided to the Plaintiffs constitute fraud and/or defalcation ...." *Complaint* at ¶ 40. The Complaint also alleges that the Debtor's actions "constitute embezzlement and/or larceny ...." *Complaint* at ¶ 41. Section 523(a)(4) excepts from discharge four categories of debt: 1) fraud while acting in a fiduciary capacity; 2) defalcation while acting in a fiduciary capacity; 3) embezzlement; or 4) larceny.

The first two categories require that the debtor was acting as a fiduciary for the creditor. Courts in this District frequently rely on the following recitation of the law regarding fiduciary relationships:

> The traditional definition of "fiduciary" involving a relationship of confidence, trust and good faith, is too broad for the purposes of bankruptcy law. Rather the meaning of "fiduciary" for purposes of Bankruptcy Code section 523(a)(4) is limited to instances involving express or technical trusts. Moreover, the trustee's duties must be independent of any contractual obligation between the parties and must be imposed prior to, rather than by virtue of, any claim of misappropriation. [...] Accordingly, implied or constructive trusts and trusts ex malaficio are not deemed to impose fiduciary relationships under the Bankruptcy Code. The reason for this narrow interpretation is to promote the Bankruptcy Code's "fresh start" policy.

In re Kaczynski, 188 B.R. 770, 773-74 (Bankr. D.N.J. 1995) (internal citations omitted). Because the relationship between the Avons and Unlimited Design does involve an express or technical trust, the Plaintiffs rely on In re Caretta, 219 B.R. 66 (Bankr. D.N.J. 1998) in which the court found that in New Jersey a fiduciary relationship arises between a corporation and its creditors once the corporation becomes insolvent. The Plaintiffs state in their brief that: "Defendant Linda Ingalls'

closely held business, Unlimited Designs, was insolvent at the time she misappropriated Plaintiff's [sic] money." *Plaintiffs' Trial Brief* at 4. That self-serving statement is not supported by any evidence. The Plaintiffs did not offer any evidence of the financial condition of Unlimited Designs, let alone its financial condition during the relevant time period. While Ms. Ingalls herself did testify that her business was declining in 2007, that is not sufficient to establish that her corporation was insolvent. The Plaintiffs presented no evidence of the corporation's assets and liabilities, so there is nothing on which this Court can base a finding of insolvency. As a result, the Plaintiffs cannot establish that the Plaintiff engaged in fraud or defalcation while acting in a fiduciary capacity.

The second two categories of § 523(a)(4) - embezzlement and larceny - do not require that the debtor was acting in a fiduciary capacity. The Plaintiffs' trial brief focuses on larceny rather than embezzlement. New Jersey recognizes the following common law definition of larceny: "a felonious taking by trespass and carrying away of personal property without the owner's consent and with the felonious intent to permanently deprive the owner of the property and to convert it to the use of the taker." Meissner v. Aetna Cas. and Sur. Co., 195 N.J. Super. 462 (Law Div. 1984). Some authorities hold that "[f]or purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.' " 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev. 2008); *see also*, In re Schlessinger, 208 Fed. Appx. 131, 133 (3d Cir. 2006) ("Larceny ... is the felonious taking of another's personal property with the intent to convert it or deprive the owner of the same. 4 Collier on Bankruptcy ¶ 523.10 (15th ed.2006)"). The Court finds that the Plaintiffs have not established a case for larceny under either definition.

Both the federal and New Jersey definitions of larceny require that the taking itself have been felonious. Felonious is defined as " 'proceeding from an evil heart or purpose; malicious; villainous ... Wrongful; (of an act) done without excuse or color of right.' " Elliott v. Kiesewetter (In re Kiesewetter), 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008) (quoting Black's Law Dictionary (8th ed. 2004)). The taking at issue here was done under color of right: the Avons voluntarily gave the $150,000 to Unlimited Designs. Even if the Court were to consider this under the larceny prong, the Avons have still not made out a case. "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. Moore v. United States, 160 U.S. 268 (1895)." In re Schlessinger, 208 Fed. Appx. 131, 133 (3d Cir. 2006). As will be discussed below, there is no evidence that Ms. Ingalls acted with fraudulent intent when she used the remaining $18,000 to pay business expenses.

**Third Count - 11 U.S.C. § 523(a)(6)**

Section 523(a)(6) prevents discharge of a debt resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court in Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57 (1998), made clear that for §523(a)(6) to apply, the actor must intend the consequences of the act, not simply intend to commit the act itself. Id. at 60. Both willfulness and maliciousness must be proven to block discharge under section 523(a)(6). In re Ormsby, 591 F.3d 1199 (9th Cir. 2010).

The willful prong of § 523(a)(6) "is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own

conduct." Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002). The Debtor is charged with the knowledge of the natural consequences of his actions. Cablevision Sys. Corp. v. Cohen (In re Cohen), 121 B.R. 267, 271 (Bankr. E.D.N.Y. 1990); *see* Su, 290 F.3d at 1146 ("In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action."). "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001) (internal citations omitted). Malice may be inferred based on the nature of the wrongful act. *See*, Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 554 (9th Cir. 1991). To infer malice, however, it must first be established that the conversion was willful. *See,* In re Thiara, 285 B.R. 420, 434 (9th Cir. BAP 2002).

Here, the Plaintiffs have established that Ms. Ingalls acted intentionally when she used their remaining funds for paying business expenses rather than buying home furnishing for them, but that is only part of the equation. The Plaintiffs must also establish that Ms. Ingalls harbored a subjective intent to inflict injury on them through her actions. Ms. Ingalls convincingly testified that at the time she used the Avons' remaining funds to pay bills she still believed that Mr. Avon was going to live up to his promise to pay her a 25% commission on all purchases not just the purchases made directly through Unlimited Designs. She also testified that multiple times Mr. Avon had promised to pay her a bonus at the end of the project for her good work. Ms. Ingalls calculated that the Avons owed her $66,447 in commissions [Ex. D4]. If the Avons paid even a portion of those commissions then Ms. Ingalls would have no difficulty replenishing the funds she had used. Based on Ms. Ingalls' testimony, the Court finds that she did not harbor a subjective intent to injure the Avons

through her actions; she sincerely believed that she would be able to make things right and complete the project to their satisfaction. Because the Debtor's subjective belief is the key to § 523(a)(6), the Court must find in favor of the Debtor on this count as well.

### Conclusion

The Court finds no basis to pierce the corporate veil and hold Linda Ingalls personally liable for a debt to the Plaintiffs. The Court also finds that the Plaintiffs have failed to meet their burden of proof on all three counts. Judgment is rendered in favor of the Defendant. Defendant's counsel should submit a form of order in accordance with this opinion.

                                          */s/ Kathryn C. Ferguson*
                                          KATHRYN C. FERGUSON
                                          US Bankruptcy Judge

Dated: February 19, 2010